UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CLAUDIA SANDERS,<br><br>  Plaintiff,<br><br>  v.<br><br>KOOTENAI HOSPITAL DISTRICT,<br><br>  Defendant. | Case No. 2:24-cv-00186-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Defendant Kootenai Hospital District's ("Kootenai Hospital") Motion to Dismiss (Dkt. 21); Plaintiff Claudia Sanders' ("Sanders") Motion in Limine (Dkt. 24); her Amended and Corrected Motion in Limine (Dkt. 25); her Motion for Terminating Sanctions (Dkt. 31); and her Motion to Disqualify and Remove Defense Counsel (Dkt. 33).

Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court grants Kootenai Hospital's motion to dismiss Sanders' age discrimination claim and denies Sanders' motions in limine without prejudice. Further, the Court denies Sanders' motion for sanctions and her motion to disqualify Kootenai Hospital's counsel.

**MEMORANDUM DECISION AND ORDER - 1**

## I. BACKGROUND

Sanders is a former employee of Kootenai Hospital. (Dkt. 1-2 at ¶¶ 1.2, 2.4.) On July 3, 2023, Sanders' co-worker, Savannah Wheeler ("Wheeler"), met with the Director of Behavioral Health Sandra Mueller ("Mueller"), to discuss workplace concerns regarding Sanders. (Dkt. 30-2 at ¶ 2.) Mueller attests that during that meeting, Wheeler handed Mueller a six-page, hardcopy document (the "Wheeler Report") about Sanders' work performance. (*Id.*)

The Wheeler Report details concerns regarding Sanders' care and professionalism toward patients and offensive statements she allegedly made in the workplace, including describing a person as an "Aryan," calling coworkers with tattoos "low IQ" and patients "retarded," and stating an abused patient "deserved" to be beaten. (Dkt. 34-2.) Mueller attests that, while meeting with Wheeler, Mueller made handwritten notes both on a piece of paper and directly on the hardcopy Wheeler Report. (Dkt. 30-2 at ¶ 2.) Shortly after meeting with Wheeler, Mueller emailed Human Resources about Sanders' performance and gave the hardcopy Wheeler Report to Human Resources. (*Id.* at ¶ 3.) Mueller never received nor was aware of an electronic Word document version of the Wheeler Report. (*Id.* at ¶ 2.) According to Kootenai Hospital, three days after Mueller delivered the hardcopy Wheeler Report to Human Resources, that hardcopy was scanned as a PDF and uploaded onto Kootenai Hospital's computer system. (Dkts. 34-1 at ¶ 11; 30-1 at ¶ 5; 30-3 at ¶ 7.)[1]

---

[1] Kootenai Hospital Human Resources Business Partner Kimberley Hentges (formerly Kimberly Van Slate) testified that on or around August 22, 2023, she also scanned a hardcopy of the same Wheeler Report. (Dkt. 30-1 at ¶ 4.) She also testifies to never having or being aware of a digital version of the Wheeler Report. (*Id.* at ¶ 2.)

On July 3, 2023, Kootenai Hospital placed Sanders on administrative suspension pending an investigation into the misconduct allegations. (Dkt. 1-2 at ¶ 2.17.) Sanders then met with Kootenai Hospital staff again on August 2, and Kootenai Hospital terminated her employment on that day. (*Id.* at ¶ 2.51.) On March 11, 2024, counsel for Sanders filed her complaint against Kootenai Hospital in Kootenai County District Court. (Dkt. 1-2.) In that complaint, Sanders alleges that Kootenai Hospital engaged in age discrimination in violation of the Idaho Human Rights Act ("IHRA"), Idaho Code §§ 67-5901, 67-5909; wrongfully terminated her in violation of public policy; defamed her and placed her in a false light; engaged in intentional infliction of emotional distress; and violated her First and Fourteenth Amendment rights. (Dkt. 1-2 at ¶¶ 3.1-3.42.) Kootenai Hospital timely removed Sanders' case to federal court. (Dkt. 1-8.) Thereafter, Sanders' counsel withdrew (Dkt. 13), and Sanders is now pursuing her claims pro se.

Kootenai Hospital moves to dismiss Sanders' age discrimination claim under the IHRA because she failed to exhaust her administrative remedies by filing a complaint with the Idaho Human Rights Commission ("IHRC"). (Dkt. 21.) Meanwhile, Sanders moves in limine—despite that discovery is ongoing and the Court has not yet scheduled a trial date—to admit Kootenai Hospital's response to a co-employee's IHRC complaint, to exclude several unspecified "hearsay statements" by her former coworkers, and to exclude the Wheeler Report. (Dkt. 24.)

Further, during discovery, Sanders raised concerns that the Wheeler Report was "fabricated" and that Kootenai Hospital had not produced the metadata for the Wheeler Report. Primarily on this basis, Sanders moves for terminating and other sanctions against Kootenai Hospital, its counsel, and several of her former coworkers, whom she alleges engaged in fraud by

**MEMORANDUM DECISION AND ORDER - 3**

fabricating the Wheeler Report. (Dkt. 31.) Sanders also moves to disqualify Kootenai Hospital's counsel and his law firm from representing Kootenai Hospital in this case. (Dkt. 33.)

## II.     DISCUSSION

A.     **Kootenai Hospital's Motion to Dismiss**

Kootenai Hospital moves under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Sanders' age discrimination claim alleged under the IHRA because Sanders failed to exhaust her administrative remedies. (Dkt. 21) (citing I.C. §§ 67-5908(2)). A party may move at any time under Rule 12(b)(1) to dismiss a claim for lack of subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (concluding subject matter jurisdiction involves court's power to hear a case and can never be forfeited or waived). Generally, if a nonmoving party fails to exhaust her statutory administrative remedies for a claim before filing her complaint, a court lacks subject matter jurisdiction over the claim. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). The IHRA requires an aggrieved party to file a complaint with the IHRC before filing a lawsuit alleging IHRA violations. I.C. §§ 67-5908(2).

Here, Sanders alleges her age discrimination claim under the IHRA. (Dkt. 1-2 at ¶¶ 3.1-3.7.) She fails, however, to allege that she exhausted her administrative remedies under the IHRA or to produce any documentation showing that she did. (*See generally* Dkt. 1-2.) Moreover, Sanders has failed to respond to Kootenai Hospital's motion to dismiss. *See* Dist. of Idaho Loc. R. 7.1(e) (providing party's failure to timely respond to motion may be deemed consent to court granting motion). Meanwhile, Sanders concedes in communications with Kootenai Hospital's counsel and the IHRC that she failed to exhaust her administrative remedies. (*See* Dkt. 30-3 at p. 13) ("I am aware we are past the deadline to file a right to sue letter."); p. 15 ("My attorney

failed to exhaust all administrative remedies.")). Further, she has omitted reference to her age discrimination claim in her recent filings. (*See, e.g.*, Dkt. 31-2 at p. 1) (describing claims but omitting age discrimination claim). Because Sanders did not allege she exhausted her administrative remedies under the IHRA and did not respond to Kootenai Hospital's motion asserting she failed to do so, and because the record shows Sanders concedes this issue, the Court grants Kootenai Hospital's motion to dismiss Sanders' age discrimination claim.

**B.     Plaintiff's Motions in Limine**

Sanders moves in limine (1) to admit in evidence Kootenai Hospital's response to a former co-worker's IHRC complaint; (2) to exclude several unspecified "hearsay" statements made by her former coworkers; and (3) to exclude a copy of the Wheeler Report. (Dkt. 24 at pp. 1-2.) Sanders' "amended" motion in limine appears to contain the same requests as her initial motion in limine but has different versions of her previously submitted attachments. (Dkt. 30.) Kootenai Hospital opposes these motions. (Dkt. 25.)

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area" before trial. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). The Court has discretion to decide when and how to rule on a motion in limine to "best manage the course of trial." *Carbajal v. Hayes Mgmt. Servs., Inc.*, No. 4:19-CV-00287-BLW, 2021 WL 2711465, at *1 (D. Idaho July 1, 2021) (citing *Luce v. United States*, 469 U.S. 38, 44 n.4 (1984)). A party should not use a motion in limine to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Where a party brings a

**MEMORANDUM DECISION AND ORDER - 5**

motion far in advance of trial and the Court is unable to weigh the motion in proper context, the Court may deny the motion as premature. *Carbajal*, No. 4:19-CV-00287-BLW, 2021 WL 2711465, at *1.

Here, Sanders moves in limine to admit and exclude evidence at trial before the close of discovery, before dispositive motions, and before any order setting trial. At this early stage of litigation and without more context than Sanders has provided, the Court cannot rule on the admissibility of evidence. Notably, Sanders provides no evidentiary arguments in support of her motions in limine. For example, she seeks to admit Kootenai Hospital's response to a coworker's IHRC complaint without any explanation how that proceeding is relevant to her claims. (Dkt. 24-1 at pp. 8-16.)[2] Further, Sanders moves to exclude alleged hearsay statements by former employees without providing those statements. (*Id.* at p. 5.) As a result, the Court has no way of knowing whether the statements are inadmissible. Finally, Sanders cites several evidentiary rules to argue the Court should exclude the Wheeler Report. (*Id.* at pp. 5-6.) Sanders, however, fails to apply those rules to the Wheeler Report in any meaningful way. For these reasons, the Court denies Sanders' motions in limine without prejudice as premature.

C.    **Sanders' Motion for Sanctions**

Sanders also moves for terminating sanctions and for sanctions under Rules 26 and 37 of the Federal Rules of Civil Procedure against Kootenai Hospital, its counsel, and several of Sanders' former coworkers. (Dkt. 31.) Under Rule 37(d)(1)(B), "a motion for sanctions for failing

---

[2]    Moreover, even if the document were relevant, its admissibility is questionable. *See Jeremiah v. Yanke Mach. Shop, Inc.*, 953 P.2d 992, 996-97 (Idaho 1998) (holding trial court did not abuse discretion by excluding evidence regarding IHRC proceeding).

to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Further, the Local Rules define "confer" as "to speak directly with opposing counsel or a self-represented litigant in person, by video, or by telephone, to identify and discuss disputed issues and to make a reasonable effort to resolve the disputed issues." Dist. Idaho Loc. Civ. R. 37.1. In other words, sending an electronic communication does not satisfy the "confer" requirement. *Id.* The Court's scheduling order likewise requires parties to contact Court staff before filing any discovery motion. (Dkt. 11 pp. 3-4.)

Here, Sanders failed to meet and confer with Kootenai Hospital's counsel before filing her motion for sanctions. Sanders' reliance on an email "conferral" on January 9, 2025, is disingenuous. As noted above, an email does not satisfy the meet and confer requirement. Further, the email Sanders relies on is an email from the Court's law clerk asking the parties to meet and confer on a discovery issue. Sanders, however, did not follow that guidance. Rather, between the law clerk's email and Sanders' motion for sanctions, there is no evidence Sanders met and conferred with Kootenai Hospital's counsel. Accordingly, the Court finds Sanders failed to comply with Rule 37(d)(1)(B) and Local Rule 37.1 before filing her motion for sanctions.

Notwithstanding this failure, the Court rejects Sanders' complaints in support of her sanctions motion, including her chief complaint that Kootenai Hospital (or others) allegedly spoliated the Word document version of the Wheeler Report and fabricated the Report. "Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to properly preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Sanders v. Univ. of Idaho, Coll. of L.*, 634 F. Supp. 3d 936, 940 (D. Idaho 2022) (citation and

quotation marks omitted). When considering whether to impose a spoliation sanction, judges generally consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013).

Here, the record does not support Sanders' allegations of spoliation. As Kootenai Hospital explains, it has determined it only has a PDF copy of the Wheeler Report, and it has provided the document to Sanders multiple times with accompanying metadata. (Dkt. 34 at p. 9.) To satisfy Sanders' demands for metadata corroborating the PDF's legitimacy, Kootenai Hospital's counsel conducted additional searches of Kootenai Hospital's computers and located another PDF copy of the same Wheeler Report, which had been scanned from hardcopy to PDF on July 6, 2023. (Dkt. 34-1 at ¶ 11.) According to Kootenai Hospital, it does not possess a Word document version of the Wheeler Report to the best of its knowledge. (Dkt. 34 at p. 9.) Further, Kootenai Hospital explains it does not know how Wheeler created the report. (*Id.*)

Sanders' assertions that either Kootenai Hospital destroyed the Word document version of the Wheeler Report or altered the PDF copy of that document are purely speculative. Likewise, Sanders' allegations that the Wheeler Report was fabricated are also speculative. In support of her speculation that the Wheeler Report was fabricated, Sanders questions the Bates Numbers associated with the document and contends Kootenai Hospital provided her with false metadata because its e-discovery platform exported the metadata as an Excel file. (Dkt. 31-2 at pp. 11-12, *see also* Dkt. 25-1 at pp. 4-7.)

In response, Kootenai Hospital explains that the Wheeler Report shared a Bates Number with another document because they were scanned together at the same time, so when Kootenai Hospital's e-discovery platform exported metadata regarding the Wheeler Report, it also exported information about the multiple documents contained within the single scanned PDF file. (Dkt. 34 at p. 11) (citing Dkt. 34-1 at ¶¶ 4, 9). Kootenai Hospital further explains that it is normal for e-discovery platforms to export metadata for scanned PDFs in an Excel format. (*Id.*) (citing *Anderson v. Sch. Bd. of Gloucester Cnty., Virginia*, 2021 WL 1134788 (E.D. Va. Mar. 24, 2021)). To the degree Sanders contends this production equates to "fabricating" a document or metadata, she appears to misunderstand how e-discovery platforms work in practice.

The Court finds Kootenai Hospital's explanation about its possession and production of the Wheeler Report and related metadata is supported by the record. To the extent Sanders disputes Kootenai Hospital's explanation, she has available discovery tools to possibly refute that explanation. For example, Sanders could depose Wheeler about the Wheeler Report, including how it was created and where it was stored, if anywhere. Further, Sanders could retain an information technology expert to opine on whether the Wheeler Report is authentic or fabricated. Sanders, however, is not qualified to provide such an opinion. Absent concrete proof of fabrication or spoliation, the Court declines to accept Sanders' speculative beliefs as a basis to sanction Kootenai Hospital, its counsel, or anyone else. Accordingly, the Court denies Sanders' motion for sanctions and her miscellaneous requests in that motion.

**D.**   **Sanders' Motion to Disqualify Counsel**

Finally, Sanders moves to disqualify Kootenai Hospital's counsel. (Dkt. 33.) In her motion, she repeats the same allegations outlined in her motion for sanctions and additionally makes more

pointed personal attacks against counsel. (*Id.*; Dkt. 33-1 at pp. 10-11.) She suggests counsel has "made himself a witness" based on his alleged fraud and perjury and argues he should be disqualified from also acting as an attorney in this case. (Dkt. 33-1 at pp. 14-15.) The Court denies Sanders' motion to disqualify counsel for the same reasons it denies her motion for sanctions: the record lacks any evidence to support her accusations. While Sanders dedicates over sixty pages to personally attacking counsel, her accusations are inconsistent with her own earlier representations. (Dkt. 30-3) (quoting Sanders as describing counsel as "remarkably pleasant and a credit to courtesy"). Absent any evidence that counsel fabricated or spoliated evidence or otherwise engaged in misconduct, there is no likely scenario in which he will be a witness in this case. Accordingly, the Court denies Sanders' motion to disqualify Kootenai Hospital's counsel.

The Court reminds all parties to treat each other with respect and civility. As Local Rule 83.8 provides, civility is the responsibility of every lawyer and litigant, including pro se litigants. Unfounded accusations of perjury, fraud, and misconduct do nothing to advance the merits of the case. Further, in the future, the parties must comply with the meet and confer requirement before filing a discovery motion. This requirement provides a party must "speak directly with opposing counsel" and "make a reasonable effort to resolve disputed issues" before filing a discovery motion. If a party files a discovery motion in this case without fulfilling the meet and confer requirement, the Court will summarily deny that motion without prejudice.

### III.   ORDER

**IT IS ORDERED that:**

1.   Defendant Kootenai Hospital District's Motion to Dismiss (Dkt. 21) is **GRANTED.**

**MEMORANDUM DECISION AND ORDER - 10**

2. Plaintiff Claudia Sanders' Motion in Limine (Dkt. 24) and Motion to Amend/Correct the Motion in Limine (Dkt. 25) are **DENIED WITHOUT PREJUDICE.**

3. Plaintiff Claudia Sanders' Motion for Sanctions (Dkt. 31) is **DENIED**.

4. Plaintiff Claudia Sanders' Motion to Disqualify Counsel (Dkt. 33) is **DENIED**.

5. Parties are not authorized to file discovery motions before the parties meet and confer on disputes and engage in Court-facilitated mediation, according to the Court's Scheduling Order (Dkt. 11). Failure to comply with the Scheduling Order will result in immediate dismissal of the discovery motion without prejudice.

DATED: April 10, 2025

Amanda K. Brailsford
U.S. District Court Judge